CITY BANK FARMERS TRUST CO. (FORMERLY
FARMERS LOAN & TRUST CO.), ADMINISTRA-
TOR, *v.* McGOWAN, COLLECTOR OF INTERNAL
REVENUE.

No. 294.   Argued January 4, 1945.—Decided January 29, 1945.

*Messrs. James Lloyd Derby* and *J. Seymour Montgomery, Jr.,* with whom *Messrs. Frederick P. King* and *John K. Watson* were on the brief, for petitioner.

*Assistant Attorney General Samuel O. Clark, Jr.,* with whom *Solicitor General Fahy, Messrs. Sewall Key, J. Louis Monarch, Carlton Fox* and *Chester T. Lane* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case presents an issue of importance arising under § 302 (c) of the Revenue Act of 1926, as amended,[1] which requires inclusion, in the gross taxable estate of a decedent, of any interest in property of which the "decedent has at any time made a transfer . . . in contemplation of . . . his death . . ." More specifically, the inquiry is whether the section reaches allowances out of the income of an incompetent person.

Helen Hall Vail died in 1935 intestate. For nine years she had been incurably insane. In 1926 an adjudication of incompetency was entered by the Supreme Court of the State of New York, and a committee was appointed to care for her property, which consisted of income-producing realty and personalty. In addition, she was in receipt of the income of a trust. During the period of five years prior to the adjudication her annual income from all sources had averaged $300,000. She was over 70 years of age but in good physical health. She had a living daughter and three grandsons, children of a deceased daughter. Application was made to the court to make allowances out of income to Mrs. Vail's issue and to a brother and sisters. The court referred the matter to a referee before whom it was shown that she had, over a period of years, allowed

---

[1] Internal Revenue Code § 811 (c), 26 U. S. C. § 811 (c).

each of her daughters $6,000, and one of her sisters $500, per annum, and had made gifts to her daughters, but not with regularity. As she was confined in an institution, her total needs, including maintenance and taxes, did not exceed $50,000 per annum. Accumulated income in the hands of the committee amounted to over $750,000.

The court, on the basis of the referee's report, entered an order which, after reciting that Mrs. Vail had made no will, that the daughter and grandchildren, or their issue, would, upon her death, be her only heirs at law and next of kin, and the only persons entitled to share in her estate, and that, if she were in possession of her mental faculties, "she would desire that the allowance hereinafter fixed be made . . ., and would make such allowances to such persons out of her property," directed the committee to pay yearly, in quarterly installments, $50,000 to the living daughter and $50,000 to the guardian of the children of the deceased daughter, $2,000 each to all but one of the brother and sisters; and $3,000 to the remaining sister.

Some six years later an application was made for an increase in the allowance. The matter was again referred for hearing and, on the coming in of the referee's report showing that accumulated income in Mrs. Vail's account had increased to over $1,000,000, that income had averaged, for over five years, approximately $395,000 per annum, and, after paying allowances and all expenses, the surplus averaged about $191,000 a year, the court made an order reciting that she was then 77 years of age and incurable, enumerated the issue who would be entitled to her estate at death, that she had no will, and that if she were competent she would have desired that the sums named in the earlier decree be augmented, raised the allowances to the daughters and to the grandchildren collectively to $75,000, retroactive to the date of the original order. It was never claimed, and is not contended, that the next of kin needed any such allowances for their maintenance

and support in their station in life. It is conceded that the brother and sisters to whom allowances were made were destitute and in need of maintenance.

At Mrs. Vail's death the allowances theretofore paid totaled $1,377,866.67. The Commissioner of Internal Revenue included the sum in the decedent's gross estate and determined a deficiency. The petitioner, as administrator, paid the sum demanded, claimed a refund and, on denial, instituted this action in the District Court. That court, upon consideration of the record of the proceedings in the Supreme Court of New York, found that the total of the allowances was properly included in the decedent's gross estate, except so much as represented annual payments to the daughter and the grandchildren's guardian of $6,000 each and $500 per annum of the gifts to collaterals, and entered judgment accordingly.[2] The Circuit Court of Appeals, by a divided court, affirmed the judgment.[3] We granted certiorari.

The Supreme Court of New York is empowered by statute to act as representative of the State, as *parens patriae,* in caring for the persons and the estates of its incompetent citizens. That court may grant allowances out of income only if it determines that the incompetent would probably have granted such allowances himself had he been sane. The court does not, in any proper sense, act as the incompetent's agent. In the exercise of the power the primary consideration is that the incompetent's property shall not be wasted but preserved against the possibility of restoration to sanity. On these propositions the parties are in accord.

The petitioner urges that the present case is not within the terms of the statute and that, in enacting § 302, Congress did not contemplate any such contingency as that

---

[2] 43 F. Supp. 790.

[3] 142 F. 2d 599.

here involved. It insists that Mrs. Vail made no transfer but, if any was made, the court made it; that she had and could have no motive in respect of the gift. In addition, it urges that, under the State law, the court's control over the estate ceases at the incompetent's death, and the court cannot make a will for her or in any wise interfere with the devolution of her estate. Hence, it concludes that to suggest the court sanctioned transfers of a testamentary character is to assume that it exceeded its powers. Such an assumption, so petitioner says, ought not to be indulged. On the contrary, it should be presumed that the court acted within its granted powers; that is, authorized transfers *inter vivos,* with no testamentary motive.

The Government, on the other hand, takes the position that nothing in the law of New York, and no authority cited by the petitioner, precludes the State court from making an allowance in contemplation of death if, upon the record made, the court, placing itself in the incompetent's position on the supposition that she were sane and competent, concludes that she would have made the transfers. And, it adds, that what was done by the Supreme Court in this case was not appealed and is now beyond correction, if erroneous, and that the records and orders evince an understanding that the certainty of continuance of disability until death, the fact of intestacy, and the natural expectations of the distributees under the intestate laws were prevalent factors in moving the court to make the orders in question, and characterize the court's action as taken in contemplation of death. The Government says that, as the court was required to, and did, act as the decedent would have acted if competent, this case is not outside the terms of § 302 (c) but, on the contrary, in contemplation of law, the decedent did make the transfers in question.

The issue is a narrow one. Literally Mrs. Vail neither made the transfers nor did she have any motive with re-

spect to them. But a court stood in her place and unquestionably had the function of effectuating a transfer of her property and of determining what motive or purpose would have actuated her had she been competent to act. It seems to us that it is sticking in the bark to say that, in the circumstances, the transfers are not within the section because Congress did not add a phrase to the effect that where a court made the transfer, acting in lieu of the incompetent owner, such a transfer should be governed by the statute.

We hold, therefore, that where, as in New York, the court is to substitute itself as nearly as may be for the incompetent, and to act upon the same motives and considerations as would have moved her, the transfer is, in legal effect, her act and the motive is hers.

This being so, the only remaining question is whether the proof was sufficient to overcome the presumption arising from the Commissioner's determination that the transfers were made in contemplation of death. The applicable test is that stated in *United States* v. *Wells,* 283 U. S. 102. This is whether the thought of death is the impelling cause of the transfer. As respects the descendants of Mrs. Vail, it would seem clear enough that there was no dominant motive for the transfer other than the thought that, as they would inherit her estate, and as there was a large accumulation of unneeded income, they might as well receive substantial portions now as await her death to enjoy their inheritance. The fact that these beneficiaries did not stand in need of the money, the fact that the increase granted at the second hearing was made retroactive, and that the past instalments were paid in a lump sum, the arguments of counsel in both hearings that the only reason for granting the allowances to Mrs. Vail's descendants was that they inevitably would divide her estate amongst them, and the recitals of the court orders, to which reference has been made, all go to confirm, rather than to undermine, the Commissioner's determination.

We think the District Court was right in holding that, to the extent of $6,000 per annum, which was the sum Mrs. Vail, when competent, had regularly allowed each of her daughters, the transfers fall without the terms of § 302 (c), but that the balance of the payments to her descendants falls within its sweep.

A different question is presented respecting the allowances to collaterals. It appears that they were in need of funds for their maintenance and support, and it is obvious that no payments to them could be on account of any share of their sister's intestate estate. The allowances have the color of current payments for support and they were authorized because the court concluded that, if sane and cognizant of the situation, Mrs. Vail would have made them. These considerations lead to the conclusion that the Commissioner's determination concerning them is rebutted and that they should not have been included in the decedent's gross estate. To the extent indicated the judgment of the Circuit Court of Appeals is reversed.

*So ordered.*