DAVIDSON'S ESTATE et al. v. COMMIS-
SIONER OF INTERNAL REVENUE.

No. 3330.

Circuit Court of Appeals, Tenth Circuit.

Nov. 11, 1946.

Rehearing Denied Dec. 9, 1946.

Harvey C. Osborne, of Wichita, Kan. (Chas. G. Yankey and J. G. Sears, Jr., both of Wichita, Kan., on the brief), for petitioner.

Carlton Fox, of Washington, D. C. (Douglas W. McGregor, Sewall Key, and Helen R. Carloss, all of Washington, D. C., on the brief), for respondent.

Before PHILLIPS and HUXMAN, Circuit Judges, and BROADDUS, District Judge.

HUXMAN, Circuit Judge.

The question in this case is whether the transfer by the insured decedent of life insurance policies totaling $105,000 to a trust was made in contemplation of death within the meaning of Section 811(c) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 811(c). To present a clear picture, a rather detailed statement of the facts is necessary.

The decedent, Augusta Reta Davidson, was the widow of William Davidson, who died, testate, in 1917. The second provision of his will bequeathed $15,000 to his wife for life, with remainder to his niece, Agnes Pottenger. The fourth provision bequeathed $50,000 to her for life, with remainder to John Pottenger. He expressed a desire in his will that to expedite matters his wife execute a will and provide for the payment of such sums to the remaindermen.

Augusta Reta Davidson had no children. In 1910 she began making gifts of money and personal property at irregular intervals to her three sisters, Grace T. Gallie, Mina Irish, and Mollie Hagenbuch; to her brother, Carl J. Rockser; to her niece, Grace Lawrence, and later to a nephew, Donald Rockser. These persons were her closest relatives. Commencing in 1926, gifts of money were made more regularly by checks. The payments thus made from 1926 to 1941 aggregated $88,466.54.

On October 11, 1932, she transferred certain securities and cash to the First National Bank in Wichita in trust, with directions to pay out of principal or income $150 monthly each to Grace T. Gallie and Mina Irish, and $100 each to Mollie Hagenbuch and Carl J. Rockser and Grace Lawrence for the life of the beneficiaries. The interest of each beneficiary in the trust was to cease upon his or her death, except that in the case of Carl J. Rockser, the $100 monthly payments were to be made to his son, Donald, until the termination of the trust. On April 30, 1936, the trust was amended to provide for additional payments. To sustain the monthly payments, she made contributions to the trust, aggregating $97,700, through 1939, including $35,000 contributed at the time of the creation of the trust. The monthly payments provided for in the trust were made during the remaining life of the trustor.

In 1936 the decedent took out five life insurance policies on her life, aggregating $105,000. At the time the policies were issued, the decedent was contemplating the execution of a trust with life insurance as principal, for the payment of the $15,000 bequest to Agnes Pottenger and the $50,000 bequest to John Pottenger under her husband's will. The insurance agent suggested that she create such a trust with the insurance, and that she take out an additional $65,000 of insurance to pay death taxes and costs of administration.

In January, 1937, she, referring to her sisters, brother, nephew and nieces, told one of her sisters in substance, that she wanted to have them provided for regularly; that her husband had made a will requesting her to make one giving the $15,000 to Agnes Pottenger and the $50,000 to John Pottenger, and for these reasons she thought it would be a good idea to es-

tablish the insurance trust; that she would then feel free and have peace of mind and could go on enjoying the rest of her life if those two things were taken care of. On July 21, 1937, she irrevocably transferred all her interest in the life insurance policies to the First National Bank in Wichita, succeeded by the Fourth National Bank in Wichita on March 28, 1940, in trust, with directions to collect the proceeds of the policies upon her death, and thereafter at a terminable time to divide the trust estate into ten equal parts, two parts to be held in trust for each of her three sisters and her brother, and one each for her nephew and niece. At the time of these transfers she was in good health and had no occasion to feel that death was imminent.

The sisters and brother were to receive out of the principal and income of this trust $250 a month for life, and the niece $125 a month for life. Upon the death of any of the beneficiaries, the corpus and undistributed income of such share was to go to the trust created for the nephew, who was to receive one-third of the corpus of the trust when he reached thirty years of age, one-half of the remainder five years later, and the balance when he became forty years old. In the meantime, he was to receive out of the principal and income $200 a month. Any funds distributed to the trust after the nephew attained forty years of age were to be immediately delivered to him, free and clear of the trust. If the nephew died before receiving his full distributive share, leaving issue, the trust was to retain the principal and accrued income in equal shares, and make distributions when each child reached the age of twenty-one, and during their minority the income was to be used for their maintenance and support. In case the nephew survived the trustor and died without issue before receiving his full distributive share, the trustee was directed to distribute the principal and accumulated income in equal shares among the then subsisting trusts for the sisters, brother and niece, and upon the death of the beneficiary of any such trusts, the trust fund was to be distributed in equal shares

to the remaining subsisting trusts. Upon the death of the beneficiary of the last subsisting trust, the trustee was directed to distribute the trust fund to the heirs of the grantor. All the beneficiaries survived the decedent.

The decedent agreed to pay and did pay all the premiums on the policies. The beneficiaries, however, were authorized to pay the premiums in the event insured failed to do so. The decedent, in assigning the insurance policies to the trust, reserved no legal interest in the insurance and did not reserve the right to change the beneficiaries thereafter.

Article 4 of the Trust Agreement provided that the purpose thereof was twofold, first, that of providing a trust estate to be administered in accordance with the provisions contained therein for the benefit of the beneficiaries, and, second, that of creating a fund of cash and placing such cash at the disposal of the trustees for the purpose of purchasing assets from the executor, administrator or trustees appointed under the will of the donor, thereby equipping the estate of the donor with a fund of cash which it was contemplated would be used by the executor or administrator of the estate of the donor in effecting and terminating the distribution of two certain trusts or life tenancies, aggregating $65,000, which were created under the will of her husband. The trust instrument further provided that upon the death of the donor, the trustee was given the absolute, unqualified and unconditional privilege to purchase from the executor, administrator or trustees appointed under her will any assets of which she died seized or possessed.

The decedent executed a will in 1932, and thereafter signed several codicils thereto. It was the practice of the First National Bank in Wichita to request clients to rewrite wills having several codicils, in order, as it was alleged, to save probate costs. In accordance with this policy, and pursuant to a request of the First National Bank in Wichita, the original will and codicils were rewritten as a new will with some additional provisions. The decedent signed this will on July 21, 1937, and executed

a codicil thereto on March 23, 1940. This codicil contained a provision which bequeathed her residuary estate, which consisted of substantially her entire estate, except some small specific bequests, to the First National Bank in Wichita in trust, with directions to hold and administer the property in accordance with the terms of the insurance trust. Decedent was admitted to the hospital on October 14, 1941, and died two days thereafter.

The Tax Court found that the transfer of the insurance policies to the trust was made in contemplation of death. Judgment was entered in conformity with this finding, and the executor of the estate has appealed. Two questions are presented upon which the parties disagree. The first is one of law, and the other is one of fact. The first question requires an examination and definition of what constitutes a transfer in contemplation of death.

Appellant cites a large number of decisions of Circuit Courts of Appeals in support of its contention that these gifts were not made in contemplation of death within the meaning of the applicable section of the revenue act. We do not deem it necessary to discuss or analyze these cases, because the Supreme Court, in a series of cases, has definitely passed upon this question. In United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 451, 75 L.Ed. 867, the Supreme Court laid down the rule that a transfer or gift is made in contemplation of death within the meaning of the statute if the motive which induced the transfer is of the sort which leads to testamentary disposition. It was stated that the purpose of the statute was to "reach substitutes for testamentary disposition," and that the "thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes a final criterion to be an apprehension that death is 'near at hand.'" In City Bank Farmers Trust Co. v. McGowan, 323 U.S. 594, 65 S.Ct. 496, 498, 89 L.Ed. 483, the court said that: "The applicable test is that

stated in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867. This is whether the thought of death is the impelling cause of the transfer." In the late case of Allen v. Trust Co. of Georgia, 326 U.S. 630, 66 S.Ct. 389, 391, the court stated that: "Since the purpose of the contemplation of death provision was to reach substitutes for testamentary dispositions in order to prevent evasions of the tax (United States v. Wells, supra, pages 116, 117, 51 S.Ct. at page 451, 75 L.Ed. 867), the statute is satisfied, it is said, where for any reason the decedent becomes concerned about what will happen to his property at his death and as a result takes action to control or in some manner affect its devolution." These decisions clearly and consistently lay down the rule that the statute is satisfied if one contemplates death as something that comes to all of us, and with that in mind takes steps to control or provide for the disposition of his property in that event. The distinction is between a thought of death as something that is before all of us, and the thought of dying in the sense that death is upon us and about to take place. Colorado Nat. Bank v. Commissioner, 305 U.S. 23, 59 S.Ct. 48, 49, 83 L.Ed. 20, is not in conflict with these decisions. It refers to the principle laid down in the Wells case, and expressly states: "The meaning of this was much discussed in United States v. Wells, supra. We adhere to what was there said." All the Supreme Court decided in the Colorado Nat. Bank case was that the finding that the transfer in that case was not made in contemplation of death was supported by the evidence and would not be disturbed on appeal. There is no indication in the opinion that had the fact finding body found that it was made in contemplation of death, that that finding would not likewise have been sustained on the record.

The only question, then, is, do the facts in this case bring these transfers within the rules announced in the Wells case? It is conceded that at the time these policies were transferred to the trust, the insured was in good health and was not in danger of, nor did she contemplate that

death was upon her or was soon to overtake her. But, as pointed out, that is not decisive or controlling. The question is, did she contemplate death as outlined above and as the rule is laid down in the decisions of the Supreme Court when she made these transfers? The Tax Court found that these transfers were made in contemplation of death and our inquiry is limited to ascertaining whether such finding is supported by the record.

█ We think that the facts which have been set out in detail support the findings of the Tax Court. The impelling motive in each case is a question of fact which is to be determined from a consideration of all the facts and circumstances. Viewed in their entirety, it is not difficult to consider the will and the trust instruments as integrated parts of a single plan, testamentary in nature, for the disposition of decedent's estate to take effect at her death. The beneficiaries of the trust to which the insurance policies were subsequently assigned were decedent's closest relatives. She had been generous with them during her life and had made gifts to them totaling $88,466.54. She was desirous of providing for them for the rest of their lives. This of necessity included providing for them after her death. For this purpose she created the original trust and for the same purpose, in part, she took out these life insurance policies which she later assigned to the trust. Her husband had requested her to make a will providing for the ultimate disposal of the two bequests of $15,000 and $50,000, in which she was given a life estate. The trust instrument provided that decedent's purpose was to create a fund out of which to make specified payments to the specified beneficiaries for life, and it provided for the disposal of the remaining corpus after their death, and further provided for the payment and disposal of the $65,000 as requested by the will of her husband. After the creation of these trusts and the transfer of these insurance policies to them, she still had an estate left which passed under her will. In 1940 she made a codicil to her will in which she transferred the residuary estate to the trust to be administered thereunder. It is necessary to consider the trust and the will together in order to determine the beneficiaries of the residuary estate. The will and the trust had the common objective of financial provision for the beneficiaries after decedent's death, and it is not unreasonable to conclude from all the facts and circumstances in the case that they both sprang from the same motive, namely, a disposition, in the nature of a testamentary disposition, of her estate. Nothing was accomplished by the trust instrument that could not have been done in the same way and to the same extent by the will. The conclusion by the Tax Court that the will and the trust represent a complete plan for the disposition of her estate upon death is not one which is without support in the facts.

█ Appellant cites Colorado National Bank, supra, in support of its contention that the fact that provision was made for decedent's relatives after her death is not enough to establish that the transfers were made in contemplation of death. All that the Supreme Court said in that case was, that "The mere purpose to make provision for children after a donor's death is not enough *conclusively*[1] to establish that action to that end was 'in contemplation of death.'" In other words, whether it is or is not sufficient depends upon all the surrounding facts and circumstances. The Tax Court did not rest its conclusions alone on the fact that the transfer of these insurance policies was to take effect at death. As pointed out above, it considered all the facts and circumstances, which in this case are many, and from a consideration thereof reached its conclusion.

The finding that the proceeds of the insurance policies were a part of the gross estate because the transfer thereof was made in contemplation of death is a finding of fact,[2] and is conclusive and binding

---

[1] Emphasis supplied.

[2] In re Kroger's Estate, 6 Cir., 145 F. 2d 901, certiorari denied 324 U.S. 866, 65 S.Ct. 915, 89 L.Ed. 1421; Purvin v. Com'r, 7 Cir., 96 F.2d 929, 120 A.L.R. 166, certiorari denied 305 U.S. 626, 59 S. Ct. 88, 83 L.Ed. 401; Allen v. Trust Co. of Georgia, 326 U.S. 630, 636, 66 S.Ct. 389.

on appeal if sustained by substantial evidence.[3] As pointed out, it is our conclusion that this finding is supported by substantial evidence, and the judgment appealed from is therefore affirmed.

## On Petition for Rehearing.

Complaint is made in the petition for rehearing that we did not specifically pass upon appellant's second contention, namely, that in any way appellant was entitled to a $40,000 exemption under Section 811(g) of the Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 811(g). The statement in the petition for rehearing that two of the policies totaling $45,000 were payable originally to named beneficiaries is not supported by the record. The Tax Court specifically found that the executors, administrators and assigns of the insured were originally named beneficiaries in all of the five policies, and that thereafter on "June 17, 1936, the sister and brother of the insured were named beneficiaries, share and share alike, in the first two policies, in the total amount of $45,000," and that thereafter, on "July 20, 1937, the executors, administrators and assigns of the insured were again named beneficiaries of the policies." It thus appears that at the time the policies were issued, the designated beneficiaries in all of them were the executors, administrators and assigns of the insured, and that this was their status at the time they were assigned to the trust.

Whether any of the insurance under these circumstances was exempt was considered by the Second Circuit in Vanderlip v. Commissioner, 155 F.2d 152. While appellant seeks to distinguish this case from the Vanderlip case on the facts, a careful analysis will show that there is no substantial difference in the factual situation of the two cases. The fact that for a short time the beneficiaries of the two policies which appellant seeks to have exempted to the extent of $40,000 were changed from the insured's personal representatives to the brother and sister is of no consequence, especially so since the bene-

ficiaries were again changed to the executor, administrator and assigns of the insured, and while in that condition were then assigned to the trust. It is not necessary for the purpose of the petition for rehearing to analyze the reasoning of the Second Circuit in the Vanderlip case in detail. It is sufficient for this purpose to say that we agree with the reasoning of the Second Circuit in that case, and that in our opinion the principles enunciated therein apply with equal force here.

The petition for rehearing is accordingly denied.

---

[3] In Colorado Nat. Bank v. Com'r, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20, the court said: "It is settled law that a finding of fact made by the Board of Tax Appeals will not be disturbed on review if it is supported by substantial evidence."