BELYEA'S ESTATE v. COMMISSIONER
OF INTERNAL REVENUE.

No. 11036.

United States Court of Appeals,
Third Circuit.

Argued June 11, 1953.

Decided Aug. 7, 1953.

---

Joseph C. Glavin, Jersey City, N. J., for petitioner.

Cecelia H. Goetz, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and L. W. Post, Special Assts. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is a petition for review of an estate tax decision of the Tax Court upholding the Commissioner's determination that certain gifts made by decedent without qualification and without restriction on immediate full enjoyment by the donees were transfers in contemplation of death and, therefore, that their value was includible in decedent's taxable estate.

Under Section 811 of the Internal Revenue Code the taxable estate of a decedent includes property so transferred that it comes within the following category:

"(c) Transfers in contemplation of, or taking effect at, death

"(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"(A) in contemplation of his death * * *." 26 U.S.C. § 811, 1946 ed. Supp. III.

Our concern is the application of this language to the circumstances of this case.

Decedent, Truman S. Belyea, was born in 1873. By 1920 he had become owner of all of the capital stock of two small corporations, Belyea Company, engaged in the

manufacture and installation of gas-firing pressing machinery, and a separate corporation which held title to the real property occupied by Belyea Company. In 1922, he gave 50% of the capital stock in each of the corporations to his son and only child, Leon, who had been working for his father's company for about three years and was engaged to be married. In 1937, following a decision to expand the business and engage in a wider range of activities, the corporations were reorganized, but with father and son each still holding 50% of the capital stock.

Thereafter, starting in 1938, Truman Belyea made annual gifts, mostly to Leon but some to Leon's wife. Some of the gifts were in stock of the family-controlled corporations and some were cash gifts effectuated by transfers on the books of the Belyea Company. The gifts were as follows:

| Date | Age of Donor | Net Worth of Donee Before Gift Was Made | Donee | Amount | Form |
|---|---|---|---|---|---|
| 1/1/38 | 65 | $58,699.08 | Son | $5000 | Credit on books of Belyea |
| 3/1/39 | 66 | 66,275.53 | " | 5000 | " " " " " |
| 7/26/40 | 67 | 81,319.48 | " | 4000 | " " " " " |
| 4/25/41 | 68 | 92,409.75 | " | 37,375 | Stock in Belyea Co. |
| 4/25/41 | 68 | | " | 4500 | " " Mach. Building |
| 4/25/41 | 68 | | Son's Wife | 3900 | " " " " |
| 1/2/42 | 69 | 57,112.99 | Son | 2967 | " " " " |
| 2/2/42 | 69 | 54,255.18 | Son's Wife | 1122 | " " " " |
| 12/31/44 | 71 | 43,927.09 | Son | 3000 | Credit on books of Belyea |
| 12/31/45 | 72 | 32,047.35 | " | 3000 | " " " " " |
| 6/30/46 | 73 | 36,640.38 | " | 3000 | " " " " " |

Decedent's wife died in 1939. From that time until his death in 1946, Truman Belyea lived in the home of his son. At no time did he contribute to the household expenses or pay anything for his maintenance. Leon had been separated from his first wife in 1934 and married his present wife in 1940.

Decedent enjoyed good health until the day of his death, was actively engaged in the business of Belyea Company and was an executive of each of the family corporations. He drove his own car to and from work each day and frequently took business trips on behalf of the Belyea Company. On December 24, 1946 he worked as usual, lunched with business associates, and dined with his son and daughter-in-law, While driving alone after dinner he suffered a sudden heart attack and was later found dead at the wheel of the car. He had received no previous intimation of heart trouble. His will, which had been executed in 1939, bequeathed his entire estate to his only child, Leon.

Both father and son drew substantial salaries from the Belyea Company during the period in question. A few months prior to his death, Truman Belyea had participated with his son and others in a new business venture. Decedent's investment was $40,000 of which he borrowed $20,000. He was aware of the fact that it would take from 5 to 10 years to realize on that investment.

On these facts it is clear that when the gifts in question were made, the donor did not regard his own death as in any sense imminent. The Tax Court candidly says that "if our decision were ruled by consideration of the donor's physical condition alone, it must lead us to the conclusion that the gifts were not motivated by any anticipation of death; * * *." The donor's view that a substantial period of life and normal activity was ahead of him, at least makes more credible the present claim that gifts then made were motivated predominantly by considerations not connected with death.

Moreover, there was affirmative evidence of particular reasons intimately connected with contemporary events and future events anticipated during donor's life inducing him to wish the donees to receive and enjoy

his bounty presently. Since by far the largest gifts were made in 1941 and it is the gifts of stock in that year upon which the Tax Court relies principally as establishing that the transfers were in contemplation of death, the evidence concerning those gifts is specially noteworthy. In the Tax Court's language, "throughout the year 1941 the business of the corporation was much better than it had been in 1940 or any previous year". There was evidence that the father regarded the flourishing state of the business as attributable primarily to the son's capability and activity and that he thought this made it appropriate to increase the son's interest in the business substantially. Moreover, pleased with the son's marriage and aware that a first child was anticipated, the father expressed a desire to do something presently for the new family. Tending further to stimulate this desire was the fact that he was living and expected to continue living in the son's home as a member of the family without financial obligation for household expenses. Thus there were very definite and normally influential considerations associated with the father's lifetime rather than his demise revealed on the record as motives for his action. Indeed, less impressive considerations led the Tax Court in this very case to observe briefly that the much earlier gift made in 1922 was motivated "by a desire to give his son a financial interest in the business and to express his appreciation for the son's success in taking hold of the work". And the tendency of earlier gifts to characterize later ones is itself a makeweight in situations like this. Cf. United States v. Wells, 1931, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867.

Next, the transfers in question permitted and seemed to contemplate full enjoyment of the gifts during the donor's lifetime. This was obviously true of the small annual cash gifts of $5000 or less. But the Tax Court has questioned whether the same can properly be said of the 1941 gifts of some $42,000 worth of stock in the family business corporations. In its opinion the Tax Court stated that the stocks transferred by decedent "were not income producing" and that neither father nor son

contemplated that the business be sold or otherwise disposed of. These factors were relied on to show that the gifts of stock were intended to be substitutes for bequests. But the fact that no dividends were declared by Belyea Company in the period 1941–46 does not mean that the stocks transferred were "not income producing" in any significant legal sense. The company was making a profit. Following the stock gift of 1941, the son owned unconditionally more than 50% of the stock of the company and thus had power to cause a dividend to be declared. To say, in these circumstances, that the stock was not income producing, simply because the son chose to leave the earnings of the business in the corporation as surplus rather than draw it out as dividends, is to ignore both the practical and legal aspects of his control of the affairs of the company.

Equally unwarranted is the Tax Court's employment of the fact that no sale of the business was contemplated to support a further inference that the gifts of stock were intended as a substitute for a bequest. The hope of a father that his son will continue the family business is certainly not inconsistent with a present unqualified transfer of a controlling interest in the corporate enterprise from father to son. And the fact that the son did not thereafter sell any of the shares he received cannot affect the completeness of the gift as a full present transfer so long as he clearly had the unconditional power of sale. Indeed, the increase of the son's holdings to more than 50% of the stock of the Belyea Company put him for the first time in position to sell some of his shares if he should so desire without relinquishing control.

Thus, there are facts here which, viewed alone, would clearly be adequate to satisfy the taxpayer's burden of showing that the Commissioner was mistaken in his conclusion that the gifts were in contemplation of death. Of course, the presumption of the correctness of the Commissioner's ruling which imposes this burden of proof on the challenging taxpayer has no probative force as evidence to offset or rebut the

taxpayer's proof. Hemphill Schools v. Commissioner, 9 Cir., 1943, 137 F.2d 961.

What support then did the Tax Court find for the Commissioner's ruling? The answer seems to be revealed by the following language of the court's findings and opinion: " * * * decedent's dominant motive in making the gifts [from 1938 on] was to put into effect during his life the testamentary scheme reflected in his will by transferring directly or indirectly to his son a large portion of his estate. The gifts * * * [therefore] were made in contemplation of death and are includible in the decedent's gross estate." 1952 P–H T.C.Memo.Dec. Par. 52,337, 11 C.C.H. T.C.M. 1138. Thus, the Tax Court has undertaken to bring this case within the familiar judicial rationalization that if motives connected with anticipation of death appear in fact to have been "impelling" or "dominant" in the making of a gift, the transfer is in contemplation of death within the meaning of Section 811. Allen v. Trust Co. of Georgia, 1946, 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367; United States v. Wells, supra. Of course a finding of this kind must stand unless its factual conclusion as to motive is clearly erroneous.

To justify its quoted crucial finding the Tax Court relied heavily on the fact that decedent's will, executed in 1939, after the death of his wife, made his son sole legatee. This, it is argued, demonstrates that the gifts to the son and to the son's wife were made in an effort to carry out decedent's "testamentary scheme". Undoubtedly, there may be cases where a comparison of a pattern of inter vivos gifts with a particular scheme of distribution set out in the donor's will, permits the inference that in making the gifts, the donor was merely anticipating his testamentary scheme. Cf. Oliver v. Bell, 3 Cir., 1939, 103 F.2d 760. But we do not regard this as such a case. Decedent's wife was dead. His only child was a son with whom he made his home and who was not only associated with him in business but had contributed very substantially to the success of the enterprise. In these circumstances, his son and his son's family were not only the sole natural objects of decedent's testamentary bounty, but they were the only natural objects of lifetime concern and related donative bounty. Thus, the fact that gifts were made to the person who was sole beneficiary under the donor's will in itself has no logical tendency to prove that the testament conditioned the gifts. And beyond the identity of the beneficiary there was not any special scheme of distribution in the will, repetition of which in gifts might be significant.

The Tax Court also points out that decedent's son was not in need. He and his father each drew substantial salary from the Belyea Company during the period in question. Need of the donee may be shown to demonstrate the motive behind a challanged gift. Cf. City Bank Farmers Trust Co. v. McGowan, 1945, 323 U.S. 594, 600, 65 S.Ct. 496, 89 L.Ed. 483. But while need of the donee may support a positive inference of impelling motivation connected with life, lack of need of the donee shows no more than that one particular "life motive" among all possible motives was absent. And in this connection, we think it important that decedent made his home with his son and daughter-in-law who were expecting a first child. The domestic relationship had been such that the father had not paid for his keep. Yet some return was appropriate. And no occasion could be more timely for a substantial expression of sense of indebtedness without possibly offensive suggestion of paying for keep than when the son and his wife were about to enter into the large and continuing responsibilities of parenthood. If the son was not in need, neither was he a man of great wealth. And he certainly was about to take on potentially taxing new burdens to extend over many years. Thus the son's enlarged financial responsibilities and the father's sense of obligation to the son, rather than the fact that the son was not now in straitened circumstances, are the factors which supply affirmative indications of motivation.

The Tax Court also finds some support for its conclusion in the fact that the gifts tended to be just small enough to come within the statutory exclusion from gift taxation. Undoubtedly decedent was con-

scious of the gift tax annual exclusion, and his son so testified. But that fact sheds no light on decedent's motive for making the gifts in the first place. Indeed it could as well be argued that it demonstrates primary concern with life, i. e., with taxes which he personally must pay, rather than with death, i. e., with taxes his estate must pay. Cf. Estate of Annie F. Howell, 1943, P-H, T.C.Memo.Dec. Par. 43,047, 1 C.C.H. T.C.M. 481, *petition for review dismissed,* 3 Cir. Oct. 19, 1943. In any event we think that such evidence of tax-consciousness as there was in this record has no logical tendency to indicate a dominant purpose of escaping estate taxes which in turn might support an inference that the transfer was in contemplation of death. Cf. Cronin's Estate v. Commissioner, 6 Cir., 1947, 164 F.2d 561.

■ On the whole record, we think taxpayer carried his burden of establishing dominant "life motives", that the evidence does not support the finding that the gifts were made as substitutes for testamentary disposition, and that as no other "death motive" was suggested by the record, it was clearly erroneous for the Tax Court to determine the gifts to be in contemplation of death.

Finally, we have not overlooked the fact that the last three gifts were made less than two years before the donor's death so that, under a provision of Section 811 (c) (1) (A) as then worded[1] the gifts must, "unless shown to the contrary, be deemed to have been made in contemplation of death". This provision enables the taxing authorities to assess estate taxes upon the value of such gifts without inquiring into the circumstances of the donation. But, if a taxpayer contests such an assessment, there is persuasive authority for the position that the quoted language adds nothing to the normal burden of proof which is imposed upon a taxpayer whenever he challenges an administrative assessment. First Trust & Deposit Co. v. Shaughnessy, 2 Cir., 1943, 134 F.2d 940. Neither party here has urged any requirements of proof

for the last three gifts different from the earlier ones. Accordingly, we have treated all of them alike.

The decision will be reversed.

---

[1]. The Revenue Act of 1950 amended the relevant provision, but only with respect to estates of decedents dying after September 23, 1950.