Laurence D. Wood, S.
The executor of the estate of M. Paul Murphy, also known as Michael Paul Murphy, appeals from the order assessing, fixing and determining the tax on said estate pursuant to article 10-C of the Tax Law, which order is based on the appraisal of Joseph A. Mercurio.
The item appealed from is the inclusion in the estate for tax purposes of two 100-share certificates, Nos. C-416 and C-417, of Bush Terminal Company stock of the total value of $5,000 on the theory that it was a gift given in contemplation of death under subdivisions 3 and 12 of section 249-r of the Tax Law.
M. Paul Murphy died at the age of 74 years on October 30, 1958 a little over a month after having given the two stock *86 certificates in question to one Genevieve Ehring, a widow and close friend, to whom he was engaged. The delivery of these two certificates mentioned above occurred on either September 21 or September 28 1958, according to the affidavit of Mrs. Ehring filed in support of the compromise of a discovery proceeding brought against her by the petitioner herein to recover the stock items for the estate. The affidavit states that the above gift was made in the living room of her home in the presence of her daughter and son-in-law, who filed supporting affidavits. Mrs. Ehring’s affidavit adds that in early October the decedent advised her he would enter the hospital for an operation on October 8, 1958, said he was feeling ill and asked her to make an important visit to him at his New York City apartment. On October 7,1958, the day of the ensuing visit, decedent according to the affiant picked two certificates Nos. 9981 and 13120 (of Bush Terminal stock) from a pile of stock certificates on his bed and placed them on a dresser. He thereafter put all the other stock certificates in an envelope which he handed to her, asking her to take care of them while he was in the hospital, stating that if anything happened, she was to give the envelope to Glenn A. Powers. The affidavit continues as follows: ‘ ‘ He then handed me the other two certificates from the dresser and told me that it was mine and that I was to keep them. At that time he stated that he had not mentioned me in his will, but that someday he would change it, and that he would not forget me because I was his dearest friend and cherished companion. He then told me to visit Mr. Lowell who would advise me what to do. I stayed for about an hour with him because I could see that he was worried
The affidavit and the testimony show that the decedent had not felt well in the Summer of 1958, had gone into an up-State hospital for X rays for that reason, and had thereafter returned to New York in September feeling ill. The executor testified that physicians at Rochester, New York, had prior to Labor Day, advised decedent that a growth on his colon should be operated on and that New York City doctors had concurred, there being some doubt as to the nature of the growth.
The death certificate shows that decedent died from a pulmonary embolism and infarction due to thrombosis of the right iliac vein following surgical resection of carcinoma or cancer of the ascending colon. The thrombosis of the iliac vein resulted from pressure by surgical instruments left in the abdomen after surgery on October 11, 1958.
The petition in a discovery proceeding dated January 29,1959, later compromised by equal division of the four certificates of *87 Bush Terminal stock, alleged in detail an incomplete transfer or gift of the stock and further alleged that such shares should be delivered to petitioner and included in the inventory and appraisal of his estate.
Schedule £ ‘ Gr ” of the return and schedules submitted by petitioner on November 28,1959 as a basis for the tax appraisal and order was as follows :
SCHEDULE G.
TRANSEEKS DURING DECEDENT’S L-IEE.
Transfer to Genevieve Ehring of 200 shares of Bush Terminal Company stock of the value of about $5,000.00.
The 200 shares of Bush Terminal Company stock, Certificates No. C-416 for 100 shares and Certificate No. 0-417 for 100 shares, were given to Genevieve Ehring either on September 21, or September 28, 1958. Genevieve Ehring was a long time friend of decedent and for three years engaged to be married to him, and the shares were given pursuant to a long time promise to provide for her in a substantial way in appreciation of her kindness, companionship and affection for many years. This gift was made before he was planning to go to the hospital for an operation. He went to the hospital on October 8, 1958 and died as a result of a negligently performed abdominal operation on October 31, 1958. Except for the negligence, the operation was successful.
He had made arrangements for only a short period in the hospital and then to complete his recovery at a nursing home.
The applicable portion of Section 249-r of the tax law is as follows:
The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated (except real property situated and tangible personal property having an actual situs outside the state) : ® °
3. (a) To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money’s worth), by trust or otherwise (i) in contemplation of his death or * ® *.
12. If the decedent within a period of three years ending with the date of his death (except in ease of a bona fide sale for an adequate and full consideration in money or money’s worth) transferred an interest in property, relinquished a power, or exercised or released a power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of paragraphs three, four and seven of this section; but no such transfer, relinquishment, exercise, or release made prior to such three year period shall be deemed or held to have been made in contemplation of death.
According to the leading case, United States v. Wells (283 U. S. 102, 114) the words “in contemplation of death” mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is “ near at hand ”.— It is sufficient if contemplation *88 of death be the inducing cause of the transfer whether or not death is believed to be near. The question necessarily is as to the state of mind of the donor.
The decedent in Matter of Wells (supra) had carried on a policy of giving substantially to his children during a period of 20 years from 1901 until the year of his death in 1921, to see how they would handle funds.
The transfer is made in contemplation of death if the thought of death is the “ impelling cause of the transfer ” (City Bank Co. v. McGowan, 323 U. S. 594, 599). In that case the act which occurred in 1937 prior to the death was again a part of a definite program started years earlier in 1925 so that it could be considered that the dominant motive was other than contemplation of death. There the Supreme Court held that transfers made by a court acting for an incompetent were partly “ in contemplation of death ” and partly inter vivos type transfers.
In the case before us as in Matter of Buck (176 Misc. 848) decided in 1941 there is some evidence to the effect that the decedent had long intended to provide or convey for the benefit of the donee, but for some reason or other had never done so. The court there found that the fact that decedent retained title to the property for many years seemed to refute the executor’s contention that the transfer in question was ultimately made in accordance with a well-defined plan conceived long before its actual consummation. That court held that in view of the decedent’s age and the other facts and circumstances therein that the executor had failed to overcome the presumption under section 249-r of the Tax Law.
The evidence in the present case shows that decedent, aged 74 at the time of the transfer, had made numerous token or social gifts of small items or amounts on various periodic occasions, and had promised his friend to take care of her. His will drawn during the period of friendship and prior to the transfer made no provision for her. The evidence also shows that the gifts which the executor sought to challenge were made while anticipating an operation for a growth on the colon, which decedent as a dentist could well ponder as to its benign or malignant nature. This court has not had before it any evidence of the actual information imparted to him by the examining physicians except as hereinbefore set forth. We are told that he was “ worried ” and that at the time of the delivery of the latter of the two sets of certificates, he also laid out all his other securities to be held by his friend for transmission to Grlenn A. Powers, his executor, if anything happened.
*89 The many cases cited by the executor each disclose either a sudden death from heart attack or stroke as in Matter of Kraus (24 Misc 2d 1098) where the apparent condition of health other than age itself was found by the Surrogate to give that decedent no cause to contemplate an early death. The decision in Sharp v. Commissioner (30 B. T. A. 532, 541) likewise dealt with a person who “ in the midst of life he was in the midst of death and knew it not ”. There the decedent was not sick to his knowledge and had not been sick in 30 years, when he died suddenly from a first attack of angina pectoris. Likewise in Matter of Lenna (29 T. C. M. 892 [1960]) the decedent died at age 72 of a sudden unexpected coronary thrombosis without any previous indication of heart trouble. The court there based its finding on a record which, it said, clearly established that, at the time the questioned transfers were made and throughout the pertinent period, decedent’s health, both physical and mental, was excellent and that she had no special concern or apprehension of her death. The executor also refers to Estate of Emma L. Keck (10 T. C. 1121) which dealt with retention of a life estate under a trust drawn 15 years prior to her death, where among other things, the court held that the gift of the remainder was not in contemplation of death. There the court held there would be no contemplation of death in the absence of the life estate and that the reservation of the life estate made no difference for the present purposes. Matter of Spaulding (49 App. Div. 541, affd. 163 N. Y. 607) which was decided in 1900 long before the present statute regarding the presumption of contemplation of death was in effect, is not controlling as to cases which must be decided under the existing statute.
The executor also relies on Allen v. Trust Co. (326 U. S. 630) where decedent died in 1938 at the age of 82 after having in 1937 corrected two spendthrift trusts established in 1925, to which funds had been added in 1934, by releasing a power to amend the trusts. There the court held that the 1937 action was merely done to accomplish by an additional step a program which the decedent had previously assumed to have already been completed. A change or development in the construction of Federal law by Helvering v. City Bank Co. (296 U. S. 85) had there made a trust previously considered nontaxable subject to tax.
In the case now here for decision the decedent’s subsequent intermittent recovery after the operation for removal of the growth (found to be cancerous) and his ultimate death from unexpected causes resulting from the operation are not pertinent, since it is the motive of the testator at the time of the *90 making of the gift as they are interpreted from the information available that governs. The evidence furnished by the executor is insufficient to overcome the statutory presumption that this transfer made within three years prior to the death of decedent was made in contemplation of death. The motives shown by the executor were at best as consistent with a testamentary disposition as with an ordinary gift inter vivos. This brings the gift within the presumption. (See Matter of Williams, 262 App. Div. 1026.) The taxing order is affirmed.