**Nannie Carr HARRIS, Incompetent, and Robert A. Eubanks, Guardian, Appellee,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 72–1343.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1972.

Decided May 4, 1973.

William L. Goldman, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Mayer Rothwacks and William A. Friedlander, Attys., Tax Div., Dept. of Justice, on brief), for appellant.

James H. Johnson, III, Chapel Hill, N. C. (Haywood, Denny & Miller, Chapel Hill, N. C., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and RUSSELL, Circuit Judges.

BOREMAN, Senior Circuit Judge:

This is an appeal by the Commissioner of Internal Revenue from a decision of the United States Tax Court, 56 T.C. 1165.

In the spring of 1962, Robert A. Eubanks, the duly qualified guardian of taxpayer, Nannie Carr Harris, an incompetent, negotiated with one Robert I. Lipton for the sale of certain improved real estate owned by taxpayer in Chapel Hill, North Carolina. On May 18, 1962, Eubanks, as such guardian, and Lipton executed a contract providing for the sale of the property, subject to the required approval of the Superior Court of Orange County, North Carolina.[1] One

---

1. N.C.Gen.Stat. § 33–31 (1966 Repl.Vol.): Special proceedings to sell; judge's approval required.—On application of the guardian . . . by petition, verified upon oath, to the superior court, showing that the interest of the ward would be materially promoted by the sale . . . of any part of his estate, real or personal, . . . a decree may thereupon be made that a sale . . . be had by such person, in such way and on such terms as may be most advantageous to the interest of the ward; all petitions filed under the authority of this section wherein an order is sought for the sale . . . of the ward's real estate . . . shall be filed in the superior court of the county in which all or any part of the real estate is situated; . . . no . . . conveyance of the title [shall be] made, unless confirmed and directed by the judge, and

Thousand Dollars was to be paid upon securing the necessary judicial approval *and the balance on or before August 1, 1962.*

Pursuant to the contract and the pertinent North Carolina statutes, Eubanks filed a petition with the Clerk of the Superior Court of Orange County on May 21, 1962, seeking authority to sell the property for $156,500, alleging as grounds therefor the low net income from the property, the insufficiency of the income to provide the support needed by taxpayer and to satisfy certain debts owed by her. On the same day, the Superior Court ordered (1) that Eubanks offer the property to Lipton for $156,500, (2) that Eubanks file a report of the offer, and (3) that the sale be confirmed after ten days if no objections or upset bids were filed. Also on May 21, 1962, Eubanks made the offer and filed the report as ordered, and Lipton made the $1,000 down payment called for in the contract. The petition,

court order and report filed May 21 did not deal with the disposition of sale proceeds.

It appears that sometime between May 21, 1962, and June 1, 1962, during the 10-day period before the sale could be confirmed, Eubanks was advised that a reduction in income tax could be effected if the purchase price were payable in installments. On June 1, 1962, he filed a supplemental petition, seeking approval of an arrangement whereby Lipton would pay $46,500 upon delivery of the deed and would deposit the balance of $110,000 with First Federal Savings and Loan Association of Durham, North Carolina, as escrow agent, with instructions to the agent to pay $27,500 plus interest to the guardian on January 2 of each of the following four years. In addition to this supplemental petition, Eubanks' attorney sent a letter to the Clerk in which he approximated the tax savings if the receipts from the sale of the property were reported over a period of five years. By order [2] entered June

the proceeds of the sale . . . shall be exclusively applied and secured to such purposes and on such trusts as the judge shall specify. . . .

In the case of a private sale, such as the one here, the sale may be confirmed if no upset bids are submitted within ten days after the report of sale is filed. N.C.Gen. Stat. § 1–339.37 (1969 Repl.Vol.).

2. The Superior Court summarized the proceedings, and concluded:

This cause again coming on to be heard and being heard and it appearing to the court that under a prior order entered in this matter Robert A. Eubanks, guardian of Nannie Carr Harris, incompetent, reported to the court that he had an offer for the property described in the pleadings from Robert I. Lipton, Trustee, through Foushee-Olsen Realty Company for $156,500.00, of which sum $6,-500.00 is due and payable to Foushee-Olsen Realty Company as commissions; the said report has remained on file in this office for more than ten days as required by law; no objections or upset bids have been filed and Robert A. Eubanks, guardian for Nannie Carr Harris, incompetent, has filed a supplementary petition in which he prays that he be permitted to accept a down payment of

$46,500.00 and that the remainder of the purchase price be deposited by Robert I. Lipton, Trustee, or his assigns with First Federal Savings and Loan Association of Durham, N. C., as escrow agent, with irrevocable authorization to the escrow agent to pay to Robert A. Eubanks, guardian of Nannie Carr Harris, incompetent, on the 2nd day of January 1963, the sum of $27,500.00, plus accumulated interest and on the 2nd day of January, 1964, 1965, and 1966, each, the sum of $27,500.00 plus accumulated interest so that the taxable income from the sale of this property can be reported by the guardian on an installment sale basis and over a period of five years; and it appearing to the court that it would be to the best interest of the estate of Nannie Carr Harris, incompetent, that this method of payment for the said property would be advantageous to the estate and should be approved by the court.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED, that the sale of the property described in the pleadings by Robert A. Eubanks, guardian of Nannie Carr Harris, incompetent, to Robert I. Lipton, Trustee, or his assigns, for the full sum of $156,500.00 be and the same is

1, 1962, the Superior Court confirmed and approved the sale and authorized the plan of payment as requested in the supplemental petition.

Subsequently, the closing date of the contemplated transaction was extended and Lipton assigned all his rights in the property to W. J. Darnell, George S. Goodyear, and George F. Lattimore, Jr. (hereinafter referred to as the assignees). The property was ultimately deeded to the assignees on or about August 31, 1963, pursuant to an order [3] en-

hereby in all respects confirmed and fully approved.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the said Robert A. Eubanks, guardian of Nannie Carr Harris, incompetent, be and he is hereby authorized and permitted to accept the sum of $46,500.00 in cash and Robert I. Lipton, Trustee, or his assigns, is authorized to deposit with First Federal Savings and Loan Association of Durham, N. C., as escrow agent, under an irrevocable escrow agreement the remaining sum of $110,000.00 which escrow agreement shall authorize First Federal Savings and Loan Association of Durham, N. C., as escrow agent, to pay to Robert A. Eubanks, guardian of Nannie Carr Harris, incompetent, on the 2nd day of January, 1963, from the said funds $27,500.00 plus accumulated interest and on the 2nd day of January of the years 1964, 1965, and 1966, each, the sum of $27,500.00 plus accumulated interest to each date until transfer of the said funds to Robert A. Eubanks, guardian of Nannie Carr Harris, incompetent, has been completed, or to the duly qualified representative of Nannie Carr Harris should she die before the escrow agreement terminates.

IT IS FURTHER ORDERED AND DECREED, that Robert A. Eubanks, guardian of Nannie Carr Harris, incompetent, shall and he is hereby authorized, empowered and directed to execute and deliver to Robert I. Lipton, Trustee, or his assigns, a good and sufficient deed in fee simple, with taxes, insurance and rents adjusted as of the date of the closing of this matter and upon payment of $46,500.00 and delivery to him of a copy of the above mentioned escrow agreement between Robert I. Lipton, Trustee, or his assigns, and First Federal Savings and Loan Association of Durham, N. C., relative to the balance of $110,000.00.

3. In a second supplemental petition to the Superior Court filed on August 23, 1963, Eubanks reported that: (1) he had been unable to complete the sale of the property to Lipton; (2) Lipton had assigned his rights in the matter to Goodyear, Lattimore and Darnell; (3) the assignees had arranged through Goodyear Mortgage Corporation to finance the purchase of the property and the erection of a multiple unit motel and business building on the property for $850,000; and (4) the assignees would authorize one Lee W. Settle, Trustee in the deed of trust securing the indebtedness to Goodyear Mortgage Corporation, and the Goodyear Mortgage Corporation, to pay the first funds disbursed by the mortgagee in payment of the purchase price in the amount of $46,500, and that the Goodyear Mortgage Corporation would deposit the balance of $110,000 under the escrow agreement earlier contemplated.

The Superior Court's Order of August 23, 1963, provided in pertinent part:

ORDERED, ADJUDGED AND DECREED that Robert A. Eubanks, Guardian of Nannie Carr Harris, incompetent be and he is hereby authorized, empowered and directed to execute a fee simple deed to the property described in the pleadings to George S. Goodyear, George F. Lattimore, Jr. and W. J. Darnell and is further authorized, empowered and directed to enter into a contract with the said parties, their spouses, and Lee W. Settle, Trustee, and Goodyear Mortgage Corporation to the effect that the first monies disbursed by Goodyear Mortgage Corporation on the . . . [demand] note of $850,-000.00 [executed by the assignees payable to the Goodyear Mortgage Corporation] shall be paid to Robert A. Eubanks, guardian of Nannie Carr Harris, incompetent, and on or before December 15, 1963 and he may provide in that contract for the payment of $46,500.00 on or before the said date and for the payment of the remainder through an escrow agreement over a period of four (4) years as set out in an order of this Court dated June 1, 1962, and he is further authorized and directed to see that his deed to George S. Goodyear, George F. Lattimore, Jr. and W. J. Darnell, the deed of trust securing an indebtedness to Goodyear Mortgage Corporation, and an agreement relative to payments are filed for registration simultaneously in the Office of the Re-

tered by the Superior Court on August 23, 1963.

Under the agreement between Eubanks and the assignees, payment of the purchase price was to be substantially as set forth in the confirmation order of June 1, 1962, with only the payment dates changed to reflect the passage of time. Ultimately, the sum of $6,000 was paid during or before 1963, the sum of $40,500 was paid on or about January 17, 1964, and, also on January 17, 1964, the sum of $110,000 was paid to First Federal Savings and Loan Association of Durham pursuant to an escrow agreement [4] of that date.

In her tax return for 1964, taxpayer included in her taxable income $40,500, representing that portion of the sale price actually received by her on January 17, 1964.[5] The Commissioner determined a deficiency of $30,757.32, ruling that (1) the $110,000 paid to First Federal Savings and Loan Association, as escrow agent, and (2) $4,070.04 interest credited to the escrow account in 1964, were constructively received by taxpayer in 1964. The Tax Court recognized the established rule that where payment is made by the purchaser to a third party at the seller's behest the seller has constructively received the payment for tax purposes but held that the rule did not apply here because the $110,000 was paid to First Federal Savings and Loan Association at the direction of the Superior

Court rather than by direction of taxpayer or her guardian. The Tax Court determined a deficiency of only $226.67.[6] We reverse as to the $110,000 deposited in the escrow account. The Commissioner does not appeal the Tax Court's holding as to the interest credited to the escrow account during 1964.

Section 451(a) of the Internal Revenue Code of 1954, 26 U.S.C., provides:

The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period.

Treasury Regulations Section 1.451-2(a), 26 C.F.R., sets forth the general rule with respect to constructive receipt of income:

Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given.

It is clear that if taxpayer had not been incompetent and had made the same escrow agreement acting for her-

---

ister of Deeds of Orange County and to see that there are no intervening liens against the said property.

4. The escrow agreement between Lee W. Settle, Trustee, and the First Federal Savings and Loan Association, provided in part:

Whereas, the order of the Clerk of the Superior Court of Orange County and approval by the Resident Judge of the Fifteenth Judicial District of the Superior Courts of North Carolina, authorized and permitted the party of the first part [Settle] to deposit the balance of the purchase price and in the sum of $110,000.00 with the party of the second part, as Escrow Agent, and under the following irrevocable terms and conditions, . . . . .

5. Taxpayer reported the receipt of $5,000 of the proceeds of the sale on her 1963 individual income tax return and made an election to report the sale on the installment basis. On her 1964 return, she reported the receipt of $40,500 as a long-term capital gain installment on the 1963 installment sale. The issue here is whether the amount of the 1964 installment was understated and whether the amount deposited in escrow should have been included in the 1964 tax return.

6. This deficiency of $226.67 was apparently due to the fact that taxpayer originally claimed $10,000 as the basis of the property sold, the Commissioner used a basis of $1,000 in determining the deficiency, and the parties ultimately stipulated a basis of $6,000.

self, or if the escrow arrangement had been entered into solely by Eubanks acting on behalf of taxpayer as her guardian without the supervision of the local court, the $110,000 payment to the escrow agent would be treated as constructively received by her in 1964. Williams v. United States, 219 F.2d 523 (5 Cir. 1955); Rhodes v. United States, 243 F. Supp. 894 (W.D. S.C.1965); Pozzi v. Commissioner, 49 T.C. 119 (1967). Lipton had signed on May 18, 1962, a contract of sale calling for payment in cash on or before the date set for closing the transaction. Further, on January 17, 1964, Lipton's assignees, the ultimate purchasers, were ready, willing and able to pay the entire remainder of the purchase price, $150,500, and in fact did irrevocably part with the full amount thereof on that date. Sale proceeds, or other income, are constructively received when available without restriction at the taxpayer's command; the fact that the taxpayer has arranged to have the sale proceeds paid to a third party and that the third party is, with taxpayer's agreement, not legally obligated to pay them to taxpayer until a later date, is immaterial. *See* Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L. Ed. 319 (1939); Hicks v. United States, 314 F.2d 180 (4 Cir. 1963). The sole question presented, therefore, is whether this rule is inapplicable for the reason that, where the property of an incompetent is being sold, the terms of the sale and the disposition of the sale proceeds must be approved by the local court under North Carolina law.

In his brief filed with the Tax Court, the Commissioner argued as follows:

Respondent's [Commissioner's] position is that the entire consideration was constructively received in 1964 since it was within the power and control of the petitioner to have received the funds at that time.

\*  \*  \*  \*  \*  \*

It is the respondent's position that the circumstances of this case are such that, when the purchase price was paid into the escrow account for the benefit of the petitioner, there was constructive receipt of the full amount. When negotiations were completed and the contract entered into on May 18, 1962, it was the intention of both parties that the sale would be a cash transaction. On that date petitioner was ready, willing and able to close the transaction for a cash payment of $156,500. On the day the sale was approved by the Court, petitioner became equitably entitled to the full purchase price. This contractual right was an asset which he could sell or otherwise transfer. It was within petitioner's power and control to receive the purchase in cash, but instead he elected to have it delivered to the bank under an escrow agreement.

The Tax Court noted that implicit in this argument is the assumption that taxpayer at one time had an enforceable right to receive the total sale proceeds in cash but that she then decided to voluntarily put herself under some legal disability with respect to payment, i. e., the escrow arrangement. The Court reviewed the applicable North Carolina statutory and case law and determined that, in North Carolina, when a guardian of an incompetent sells real property under order of the court, the guardian is merely an "agent" of the court, and the sale is not consummated until it is confirmed by the resident judge, which confirmation represents the consent of the court to the sale. Pike v. Wachovia Bank and Trust Company, 274 N.C. 1, 161 S.E.2d 453 (1968). The Tax Court then concluded that Eubanks was merely acting for the Superior Court of Orange County in contracting for the sale of taxpayer's property and that the May 18, 1962, contract of sale created no rights in any of the parties unless and until the sale was confirmed by the resident judge. Since the confirmation was contained in the order of June 1, 1962, which order also authorized and directed the use of the escrow arrangement, the court held that Eubanks, on behalf of taxpayer, never had the power to receive the full purchase

price in 1964, and thus did not constructively receive that amount in 1964.

■ We find no error in the Tax Court's analysis of the respective powers of Eubanks, as guardian, and the Superior Court of Orange County. We agree that, under North Carolina law, Eubanks could not enter a binding agreement for the sale of taxpayer's real property without the confirmation of the resident judge. The error of the Tax Court was in regarding the state court's role in the proceedings as representing an interest adverse to, or independent of, the interests of the incompetent taxpayer, and in regarding the state court's order to place the funds in escrow as a denial to the taxpayer and her guardian of dominion over the payment. North Carolina Gen. Stat. § 33–31,[7] which requires judicial supervision of the sale of an incompetent's property, actually supplements the guardianship protection afforded the incompetent. The resident judge must ensure that any sale is made "on such terms as may be most advantageous to the interest of the ward."

In City Bank Co. v. McGowan, 323 U.S. 594, 65 S.Ct. 496, 89 L.Ed. 483 (1945), the Supreme Court rejected the distinction between the acts of an incompetent and those of a court acting in her behalf. The question there was whether a transfer of the decedent's property, made pursuant to court order because the decedent was incompetent, was in contemplation of the decedent's death, which fact would make the property includible in the decedent's estate for federal estate tax purposes. The Court stated, 323 U.S. at 598–599, 65 S.Ct. at 498:

> The issue is a narrow one. Literally Mrs. Vail neither made the transfers nor did she have any motive with respect to them. But a court stood in her place and unquestionably had the function of effectuating a transfer of her property and of determining what motive or purpose would have actuated her had she been competent to act. It seems to us that it is sticking in the bark to say that, in the circumstances, the transfers are not within the section because Congress did not add a phrase to the effect that where a court made the transfer, acting in lieu of the incompetent owner, such a transfer should be governed by the statute.

> We hold, therefore, that where, as in New York, the court is to substitute itself as nearly as may be for the incompetent, and to act upon the same motives and considerations as would have moved her, the transfer is, in legal effect, her act and the motive is hers.

■ The act of the Superior Court of Orange County in directing, upon the request of Eubanks, that the $110,000 be placed in escrow was "in legal effect" the act of the taxpayer. We hold that the escrow deposit was constructively received, for income tax purposes, in 1964.

Reversed.