**Robert A. BROOKS and Carol M. Brooks, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 88–1493–T.**

United States District Court, D. Kansas.

June 5, 1991.

Donald W. Bostwick, Adams, Jones, Robinson & Malone, Wichita, Kan., for plaintiffs.

Annette B. Gurney, U.S. Atty's Office, Wichita, Kan., for defendant.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on cross motions for summary judgment.* The action is brought for the refund of taxes paid for the 1980 tax year. Jurisdiction lies in this court under 28 U.S.C. § 1346(a)(1).

#### I.  *Background*

Plaintiff Robert E. Brooks was an employee of Energy Reserves Group, Inc. ("Energy Reserves") from 1977 until 1986. Energy Reserves was formerly known as

---

\* The court does not believe that oral argument would be useful in this case, and therefore de-

nies plaintiffs' request. D.Kan.Rule 206(d).

Clinton Oil Company ("Clinton"). In connection with his employment, plaintiff was offered a stock option plan to purchase 60,000 shares of stock, which option was exercised on June 17, 1980.

The ultimate issue presented is whether the option exercised by plaintiff in 1980 was a "qualified stock option" within the meaning of § 422 of the Internal Revenue Code of 1954. If so, the taxpayer need not recognize income at the time the option is exercised. If not, the taxpayer must recognize the gain received from the exercise of his option. The statute provides:

> For purposes of this part, the term "qualified stock option" means an option granted to an individual ... for any reason connected with his employment by a corporation, if granted by the employer corporation or its parent or subsidiary corporation, to purchase stock of any of such corporations, but only if—

> (1) the option is granted pursuant to a plan which includes the aggregate number of shares which may be issued under option, and the employees ... eligible to receive options, *and which is approved by the stockholders of the granting corporation* within 12 months before or after the date such plan is adopted; ....

26 U.S.C. § 422(b)(1) (emphasis added). The Treasury Regulation implementing this statute provides:

> A qualified stock option granted after December 31, 1964, must be granted pursuant to a plan *which is approved by the stockholders of the granting corporation* within 12 months before or after the date the plan is adopted. The approval of the stockholders must comply with all applicable provisions of the corporate charter and bylaws, and the law of the State of incorporation and must represent the express consent of stockholders holding at least a majority of the voting stock of the corporation voting in person or by proxy at a duly held stockholders' meeting.

26 C.F.R. § 1.422–2(b)(1) (emphasis added).

II. *Uncontroverted Facts*

The material facts set forth below are uncontroverted unless otherwise noted.

1. On January 15, 1973, the Securities and Exchange Commission ("SEC") filed an injunction action in this court against Clinton, the predecessor of Energy Reserves. [hereinafter *SEC v. Clinton*].

2. Presiding over the injunction action was the Hon. Wesley E. Brown.

3. On February 1, 1973, the Joint Shareholders Protective Committee of Clinton ("the Committee") filed a motion to intervene in *SEC v. Clinton*. Attached to this motion was the proposed complaint of the Committee requesting, among other relief, an order directing Clinton to allow inspection of its stock ledger and stockholder list, and to have the list filed with the court; and an order directing Clinton to notice and convene a meeting of its stockholders under the supervision of the court so that the stockholders could express their views, elect directors, and deal with all other appropriate matters.

4. By order filed February 27, 1973, Judge Brown found the application to intervene premature, and therefore held the application in abeyance. Judge Brown also denied the application of the Committee to inspect Clinton's stock ledger.

5. On March 8, 1973, Judge Brown approved a settlement entered into by the parties of *SEC v. Clinton*. According to this settlement, Judge Brown assumed certain duties and responsibilities in connection with Clinton's reorganization.

6. On March 9, 1973, Judge Brown entered an order appointing special counsel for Clinton to take such action and exercise such authority as set forth in the March 8 order approving settlement.

7. On March 16, 1973, Judge Brown entered order designating and approving certain individuals to serve as directors of Clinton to "serve subject to the continuing jurisdiction of the court with respect to all matters relating to the implementation, accomplishment, and enforcement of the acts to be done pursuant to the Memorandum of Understanding of Terms of Settlement and the order of the court entered thereon."

8. On May 11, 1973, Judge Brown entered an order establishing the fees to be paid to the directors for their services.

9. On June 4, 1973, Judge Brown entered an order appointing a certified public accounting firm to conduct the accounting and make the report required by his prior order of March 8, 1973.

10. On May 29, 1973, and with consent of the SEC, Judge Brown entered an order approving and appointing Richard W. Volk as President and Chief Executive Officer of Clinton, and approving a written agreement of employment between Volk and Clinton that had been approved by Clinton's Board of directors.

11. On March 18, 1974, the directors of Clinton adopted the Clinton Oil Company 1974 stock option plan that is at the heart of this dispute. It is disputed whether Judge Brown approved this Plan.

12. The last meeting of the shareholders before March 18, 1974 was on June 3, 1971. The first meeting of the shareholders following March 18, 1974 was on July 14, 1976. Thus, the March 18, 1974 stock option plan was not approved by a majority of the shareholders within 12 months either before or after the directors approved the plan.

13. On July 2, 1976, and on the motion of Energy Reserves (formerly Clinton), Judge Brown entered an order that approved the holding of an annual meeting of the stockholders of Energy Reserves to he held on July 14, 1976, and that established the procedure for examination of the list of stockholders of Energy Reserves.

14. By orders filed July 27, 1976, Judge Brown terminated the appointment of special counsel for Clinton, and terminated the court's jurisdiction and supervision as assumed by the court on March 8, 1973.

15. On June 17, 1980, plaintiff exercised his option as offered in the 1974 stock option plan. The fair market value of the stock at that time exceeded the exercise price of the option by $603,750.00, which was treated by the Internal Revenue Commission as a gain. As a result of and directly attributable to this gain, plaintiffs paid $210,253.00 for the 1980 tax year.

### III. Discussion

The parties agree that the specific issues presented are: (1) whether Judge Brown had "stockholder" authority within the meaning of 26 U.S.C. § 422(b)(1) to approve the 1974 stock option plan; and (2) if so, whether Judge in fact exercised this authority.

The court must begin its analysis with the statutory language. *Mallard v. United States Dist. Court for the Southern Dist. of Iowa,* 490 U.S. 296, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989). The plain meaning of the legislation is conclusive unless " 'the literal application of a statute would produce a result demonstrably at odds with the intention of its drafters.' " *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Thus, in determining the meaning of a statute, the court must "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States,* 494 U.S. 152, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990).

In addition, a court passing on an agency's interpretation of the statute it administers must adhere to the analysis prescribed by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984):

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or

ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based upon a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82. *See also INS v. Cardoza–Fonseca*, 480 U.S. 421, 446–48, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987); *Pension Benefit Guaranty Corp. v. LTV Corp.*, — U.S. —, 110 S.Ct. 2668, 2676–77, 110 L.Ed.2d 579 (1990).

The language of § 422(b)(1) refers only to stockholder approval as a necessary predicate to qualify a stock option for tax purposes. Nonetheless, plaintiff argues that the unique circumstances of this case permit Judge Brown's approval of the stock option plan to substitute as the functional equivalent of the statutory requirement of stockholder approval. This result, it is argued, is consistent with the underlying purpose of the statute.

The legislative history of § 422 reveals that the purpose of granting favorable tax treatment to qualified options was to allow corporations to offer an employment incentive to certain employees. *See* H.R.Rep. No. 749, 88th Cong., 1st Sess. 64 (1963). Congress was also concerned, however, that company executives could make excessive use of stock option offerings to the detriment of the stockholders' interests. *Id.* at 65. Thus, the requirement of stockholder approval was imposed to ensure the stockholders a voice in the use of stock options. *Id.*

Because the stockholders were prevented from voting on the 1974 stock option plan within the 24–month window of § 422, and because Judge Brown was representing the interests of stockholders during this time, plaintiffs argue that Judge Brown could properly serve as the stockholders' proxy in approving the stock option plan. Defendant does not dispute that the purpose of stockholder approval under § 422 was to protect the stockholders from excessively generous perquisites offered to the corporation's management. Rather, defendant contends that regardless of the adequacy of Judge Brown's supervision, § 422(b)(1) requires observance of all the formalities of corporate democracy before an employee may enjoy favorable tax treatment of income realized from the employee's exercise of a corporation-offered stock option. Defendant contends that its regulations and rulings have consistently reflected this view.

Although the statute is silent as to the procedure by which stockholder approval must be obtained, Treas.Reg. § 1.422–2(b)(1) requires that such approval comply with state law and "all applicable provisions of the corporate charter and by-laws," and further requires "the express consent of stockholders holding at least a majority of the voting stock of the corporation voting in person or by proxy at a duly held stockholders' meeting." The Service has interpreted this regulation to require both the "express consent of the stockholders who hold at least a majority of the outstanding voting stock *and* vote in person or by proxy at a duly held stockholders' meeting." Rev.Rul. 75–256, 1975–2 C.B. 194 (emphasis in original). In addition, the Service has recognized only one narrow exception to the requirement of express majority consent at a stockholders' meeting. If a stockholders' meeting is not convened, the Service has allowed the *unanimous* written consent of the stockholders to substitute for the procedure set forth in Treas.Reg. § 1.422–2(b)(1). In Rev.Rul. 80–29, 1980–1 C.B. 93, the Service explained that the purpose of unanimous consent in the absence of a stockholders' meeting is to allow dissenting stockholders an opportunity to persuade other stockholders. If, however, there are no dissenters, there is no need to require approval at a stockholders' meeting. *Id.* In reliance on this authority, the Service argues that the statute was intended not merely as one means by which the interests of the stockholders could be protected, but as the only means.

A question similar to that presented here was addressed by the Court in *City Bank Farmers Trust Co. v. McGowan*, 323 U.S. 594, 65 S.Ct. 496, 89 L.Ed. 483 (1945). In *McGowan*, the Court considered whether a

New York district court, acting on behalf of an incompetent person, could make a donative transfer "in contemplation of death" within the meaning of § 302(c) of the Revenue Act of 1926. The government took the position that the state court, which had parens patriae authority to grant allowances out of the income of an incompetent, could also make these allowances in "contemplation of death," and that the transfers granted by the state court were therefore includable in the gross taxable estate of a decedent. The Court agreed:

> Literally [the decedent] neither made the transfers nor did she have any motive with respect to them. But a court stood in her place and unquestionably had the function of effectuating a transfer of her property and of determining what motive or purpose would have actuated her had she been competent to act. It seems to us that it is sticking in the bark to say that, in the circumstances, the transfers are not within the section because Congress did not add a phrase to the effect that where a court made the transfer, acting in lieu of the incompetent owner, such a transfer should be governed by the statute.

*McGowan,* 323 U.S. at 598–99, 65 S.Ct. at 498.

As in *McGowan,* this court is asked to sacrifice the legislative intent to a literal interpretation of a statute. This the court declines. Congress is neither required nor able to foresee every contingency when it drafts legislation. It is undisputed that Judge Brown had, and in fact exercised, extraordinary powers in conducting the corporation's affairs—powers normally reserved to the directors and stockholders of a corporation. It is likewise conceded that Judge Brown represented the interests of the shareholders in his oversight of the corporation. Doc. 22, at 13. Under defendant's interpretation, even the most vigilant representation of the shareholders' interests may not substitute for the shareholders' actual votes at a shareholders' meeting. But as applied to the unique facts of this case, defendant's interpretation operates to defeat the conceded central purpose of the statute. By denying plaintiffs the tax benefit of the stock option plan, defendant would deprive the corporation of the very employment incentive that Congress intended to grant corporations. Moreover, defendant places this interpretation on the statute under circumstances when the corporation was in most need of being able to offer the statutory incentive to prospective competent officers. When Judge Brown exercised authority normally reserved to the stockholders, he acted as the unanimous voice of the stockholders. A contrary conclusion is inconsistent with the intent of Congress—an intent that the Service is not at liberty to ignore.

The court concludes that Judge Brown had the authority to exercise stockholder approval within the meaning of § 422(b)(1). It is therefore necessary to consider whether he in fact did approve the stock option plan.

The court is presented with no evidence of a written order by Judge Brown approving the 1974 stock option plan. Nor is there any transcript of any proceeding in which Judge Brown approved the plan. Instead, plaintiffs direct the court's attention to the affidavits and deposition testimony of Robert Martin, an attorney for Clinton in *SEC v. Clinton,* the affidavit of Paul Woods, former Chairman of the Board of Clinton, and the deposition testimony of Richard Volk, the president of Clinton as of May 1973. These three individuals state that they were present at a meeting in Judge Brown's chambers in March 1974 during which meeting Judge Brown approved the stock option plan already adopted by Clinton's board of directors. Plaintiffs have not deposed Judge Brown regarding his recollection of this meeting.

Plaintiffs contend that although no written record exists of Judge Brown's approval of the stock option plan, oral testimony of the persons attending the March 1974 meeting is sufficient to establish the fact of his approval. Plaintiffs also submit that the court should require defendant to produce any evidence that would controvert Judge Brown's approval of the plan. This misconstrues the burden of proof in this case. It is well established that in tax

refund cases, the taxpayer bears the burden of proving error in both the assessment and amount of the deficiency claimed by the government. *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Doyal v. Commissioner*, 616 F.2d 1191, 1192 (10th Cir.1980); *Central Motor Co. v. United States*, 583 F.2d 470, 476 (10th Cir.1980); *Brown v. United States*, 890 F.2d 1329, 1334 (5th Cir.1989). Thus, unless plaintiffs are able to demonstrate a genuine issue regarding whether Judge Brown approved the plan, summary judgment in favor of defendant is dictated. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

It has often been said that courts speak only through their orders of record or journal entries. *See United States v. Martin*, 913 F.2d 1172, 1175 (6th Cir.1990) (citing cases); *Schmidt v. Esquire, Inc.*, 210 F.2d 908, 914 (7th Cir.), *cert. denied*, 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954); *Kostyu v. United States*, 742 F.Supp. 413, 416 n. 2 (E.D.Mich.1990); *Cedar Crest Health Center, Inc. v. Bowen*, 129 F.R.D. 519, 524 (S.D.Ind.1989); *Coe v. Ziegler*, 657 F.Supp. 182, 187 (S.D.Ohio 1987); *Tate v. International Business Machs. Corp.*, 94 F.R.D. 324 (N.D.Ga.1982). It is not necessary, however, to determine whether this statement applies to every context in which the legal force of an oral, unrecorded order of the court might be called into question. For present purposes, the only question is whether Judge Brown could orally approve the 1974 stock option plan within the meaning of § 422, and if so, what evidence is sufficient proof of such approval. In resolving this matter, the court must be mindful of the protective purpose of the statutory requirement of stockholder approval.

Plaintiffs argue that nothing in the Federal Rules of Evidence precludes consideration of matters dehors the record for the purpose of proving judicial approval of the plan. *Cf. Allen v. W.H.O. Alfalfa Milling Co.*, 272 F.2d 98, 100 (10th Cir.1959) (testimony is inadmissible where an Act of Congress requires proof by specific records). Plaintiffs further contend that if anything, the Federal Rules allow consideration of such evidence. *See* Fed.R.Evid. 102 (rules to be construed so that truth may be ascertained); *id.* 402 (all relevant evidence admissible); *id.* 601, 602 (every person competent to be a witness as to matters within personal knowledge).

The court believes that a level of protection within the contemplation of Congress would be afforded either by a written record of judicial approval or by some present affirmative expression of a distinct recollection by Judge Brown. Plaintiffs have presented the court with no evidence of either a written record or of deposition or affidavit statements by Judge Brown that he recalls, with sufficient clarity, the alleged approval of the plan. Thus, there is an inadequate basis for concluding that the stockholders' interests were in fact independently represented. Plaintiffs have failed to demonstrate a genuine issue of this material fact on which they bear the burden of proof, and summary judgment in defendant's favor is therefore appropriate.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment (Doc. 21) be granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Doc. 24) be denied.