**Robert A. BROOKS and Carol M. Brooks, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 88–1493–T.**

United States District Court,
D. Kansas.

June 22, 1992.

Donald W. Bostwick, Adams, Jones, Robinson & Malone, Wichita, Kan., for plaintiffs.

Mary Dee Martoche, Office of Special Litigation, Tax Div., U.S. Dept. of Justice, Washington, D.C., Annette B. Gurney, Office of U.S. Atty., Wichita, Kan., for defendant.

## DECISION OF THE COURT

THEIS, District Judge.

Plaintiffs brought this action seeking a refund of taxes paid for the 1980 tax year. Plaintiffs seek a determination that an employee stock option exercised by Robert A. Brooks (Brooks) was a "qualified stock option" within the meaning of 26 U.S.C. § 422(b)(1).

In a previous memorandum and order published at 766 F.Supp. 993, the court granted the United States' motion for summary judgment. Upon the plaintiffs' timely motion to alter or amend or to reconsider, the court allowed plaintiffs to take the deposition of the Honorable Wesley E. Brown. The court thereafter considered Judge Brown's deposition and found that an issue of fact precluded summary judgment. The court then granted the motion to reconsider.

The court has addressed most of the issues in previous opinions. The narrow factual issue remaining for trial was whether the Honorable Wesley E. Brown, United States District Judge, approved the 1974 stock option plan of Clinton Oil Company ("Clinton") (now known as Energy Reserves Group, Inc.). The issues of law (which the court has previously addressed) are whether Judge Brown was authorized to act in the place of the stockholders and whether the lack of an official record (written order or transcript of hearing) is fatal to plaintiffs' claim of judicial approval of the stock option plan.

This matter was tried to the court on June 15, 1992. The court heard the testimony of several witnesses and had the opportunity to evaluate their demeanor and credibility. The court also received into evidence the deposition of Judge Brown. The court has considered the testimonial evidence and the exhibits and now issues the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In ruling on the motions for summary judgment, the court found the following facts to be uncontroverted. *See* 766 F.Supp. at 994–95.

1. On January 15, 1973, the Securities and Exchange Commission ("SEC") filed an injunction action in this court against Clinton, the predecessor of Energy Reserves [hereinafter *SEC v. Clinton*].

2. Presiding over the injunction action was the Honorable Wesley E. Brown.

3. On February 1, 1973, the Joint Shareholders Protective Committee of Clinton ("the Committee") filed a motion to intervene in *SEC v. Clinton.* Attached to this motion was the proposed complaint of the Committee requesting, among other relief, an order directing Clinton to allow inspection of its stock ledger and stockholder list, and to have the list filed with the court; and an order directing Clinton to notice and convene a meeting of its stockholders under the supervision of the court so that the stockholders could express their views, elect directors, and deal with all other appropriate matters.

4. By order filed February 27, 1973, Judge Brown found the application to intervene premature, and therefore held the application in abeyance. Judge Brown also denied the application of the Committee to inspect Clinton's stock ledger.

5. On March 8, 1973, Judge Brown approved a settlement entered into by the parties of *SEC v. Clinton.* According to this settlement, Judge Brown assumed certain duties and responsibilities in connection with Clinton's reorganization.

6. On March 9, 1973, Judge Brown entered an order appointing special counsel for Clinton to take such action and exercise such authority as set forth in the March 8 order approving settlement.

7. On March 16, 1973, Judge Brown entered order designating and approving certain individuals to serve as directors of Clinton to "serve subject to the continuing jurisdiction of the court with respect to all matters relating to the implementation, accomplishment, and enforcement of the acts to be done pursuant to the Memorandum of Understanding of Terms of Settlement and the order of the court entered thereon."

8. On May 11, 1973, Judge Brown entered an order establishing the fees to be paid to the directors for their services.

9. On June 4, 1973, Judge Brown entered an order appointing a certified public accounting firm to conduct the accounting and make the report required by his prior order of March 8, 1973.

10. On May 29, 1973, and with consent of the SEC, Judge Brown entered an order approving and appointing Richard W. Volk as President and Chief Executive Officer of Clinton, and approving a written agreement of employment between Volk and Clinton that had been approved by Clinton's board of directors.

11. On March 18, 1974, the directors of Clinton adopted the Clinton Oil Company 1974 stock option plan that is at the heart of this dispute.

12. The last meeting of the shareholders before March 18, 1974 was on June 3, 1971. The first meeting of the shareholders following March 18, 1974 was on July 14, 1976. Thus, the March 18, 1974 stock option plan was not approved by a majority of the shareholders within 12 months either before or after the directors approved the plan.

13. On July 2, 1976, and on the motion of Energy Reserves (formerly Clinton), Judge Brown entered an order that approved the holding of an annual meeting of the stockholders of Energy Reserves to be held on July 14, 1976, and that established the procedure for examination of the list of stockholders of Energy Reserves.

14. By orders filed July 27, 1976, Judge Brown terminated the appointment of special counsel for Clinton, and terminated the court's jurisdiction and supervision as assumed by the court on March 8, 1973.

15. On June 17, 1980, plaintiff exercised his option as offered in the 1974 stock option plan. The fair market value of the stock at that time exceeded the exercise price of the option by $603,750.00, which was treated by the Internal Revenue Ser-

vice as a gain. As a result of and directly attributable to this gain, plaintiffs paid $210,253.00 for the 1980 tax year.

Based on the testimony at trial, the court makes the following additional findings.

16. Attorney Robert Martin represented Clinton in *SEC v. Clinton*. Martin quickly ascertained that Clinton had committed clear violations of the securities laws, and the SEC was certain to prevail in the action.

17. The SEC had sought temporary and permanent injunctive relief and the appointment of a receiver for Clinton. Clinton wished to avoid certain adverse consequences which would result from the appointment of a receiver.[1] Martin proposed and SEC attorney Richard Hewitt agreed to have Judge Brown act in the role of judicial supervisor instead of having a receiver appointed. The SEC and Clinton agreed to settlement of the litigation which placed Clinton under court supervision. Plaintiffs' Exh. A, Tab 14 (Memorandum of Terms of Settlement), Tab 15 (Order Approving Settlement) (both filed March 8, 1973).

18. Pursuant to the Order Approving Settlement, Judge Brown retained the right to appoint the board of directors, special counsel, and an auditor.

19. By Order dated March 16, 1973, Judge Brown appointed Clinton's new board of directors. Henry L. Waszkowski, Jr. was designated to serve as President and Chief Executive Officer of Clinton. Plaintiffs' Exh. A, Tab 16. Judge Brown later removed Waszkowski when it became known that Waszkowski was not willing to move to Wichita and devote his full time to the position.

20. Clinton thereafter sought to hire Richard W. Volk to serve as President and Chief Executive Officer.

21. At a meeting in chambers in approximately late May 1973, Judge Brown objected to certain provisions of the draft employment agreement drawn up by Volk, specifically a provision which would require Clinton to pay Volk's full salary for the entire three year term if Volk were fired without cause. The parties agreed to a modification of this provision which met Judge Brown's approval.

22. At this same meeting in late May 1973, Judge Brown approved the stock option contained in Volk's draft employment agreement. Judge Brown was informed at that time that Volk intended to offer stock options to attract competent new officers and employees to Clinton.

23. At this same meeting in chambers, Judge Brown refused a suggestion that Clinton's directors be granted stock options. Judge Brown noted that he appointed outsiders as directors so that they would not have a financial stake in Clinton.

24. Clinton and Volk entered into a written employment agreement which contained a stock option agreement. The employment agreement contemplated the probability of future employee stock option plans, and granted Volk the right to participate in any future plans. Plaintiffs' Exh. A, Tab 19, ¶¶ 7–8.

25. Judge Brown approved the hiring of Volk and the written employment agreement entered into between Volk and Clinton in an order dated May 29, 1973 (filed June 18, 1973). Plaintiffs' Exh. A, Tab 20.

26. At a meeting on March 18, 1974, Clinton's board of directors approved an employee benefits package, which included the 1974 stock option plan.

27. At a meeting with Judge Brown in chambers on March 20, 1974, Judge Brown orally approved a benefits package for Clinton employees, including the 1974 stock option plan at issue here.

28. Also present at the March 20, 1974 meeting with Judge Brown were attorney Martin, director Paul Woods and Volk. The SEC's Hewitt appeared either in person on by telephone.

---

1. Clinton owned valuable undeveloped oil leases abroad, particularly in the North Sea off Britain, which were a principal asset of Clinton. All these foreign leases provided that the foreign government could terminate the lease if Clinton went into receivership or bankruptcy. Counsel for both Clinton and the SEC wished to avoid this consequence.

29. No meeting of the stockholders was held in the twelve months before or the twelve months after the adoption of the stock option plan.

30. The reasons for the failure to hold stockholders meetings are not material to the resolution of this action; however, it appears that one reason meetings were not held was the fear of a takeover by certain stockholders.

31. On July 27, 1976, Judge Brown terminated his supervision of and jurisdiction over Clinton. Exh. A, Tab 23.

32. The form of remedy approved in the settlement of *SEC v. Clinton*—the substitution of a Federal Judge for a receiver— was unique at the time.[2] The SEC intended that Judge Brown stand in the place of the stockholders.

33. Director Paul Woods met with Judge Brown on a frequent and informal basis. On more important matters, Martin, Volk and a representative of the SEC would also be present.

34. While Judge Brown does not specifically recall the approval of the 1974 stock option plan on a certain date, Judge Brown did testify regarding a general practice under which the Clinton parties would report proposed actions to him. If the Clinton board of directors approved of the stock option, Judge Brown testified that he would have had no reason not to approve it.

35. Judge Brown testified that he had the distinct recollection that he disapproved the directors' request to participate in the stock option plan.

36. The SEC was consulted on all matters which went before the court.

37. The SEC had no objections to the stock option offered to Volk in 1973 as a part of his employment agreement. Hewitt had no specific recollection of the 1974 employee stock option plan at issue in the present action. Hewitt testified from his general recollection that Martin would not have approached Judge Brown on such an important matter without ascertaining Hewitt's opinion first. Hewitt testified that the SEC would have had no objection to the 1974 stock option plan.

38. The court found all the witnesses to be credible. The court found especially credible SEC attorney Hewitt, who was the lead attorney in *SEC v. Clinton* and is an uninterested witness. The court found the testimony of Volk to be credible, notwithstanding his pending tax refund claim which involves the same legal and factual issues as the present case.

39. The witnesses—both interested and uninterested—recounted the same basic facts. The testimony of the other witnesses corroborated Judge Brown's recollection that he may have orally approved the stock option plan. Other corroborative evidence includes the employment contract between Clinton and Volk which included a stock option, which was approved by Judge Brown in a formal written order. The Volk employment agreement anticipated future stock option plans. Plaintiffs' Exh. A, Tab 19. The stock option plan at issue here provides the stock options for certain employees, with no stock option provision for directors. Plaintiffs' Exh. C. This is in conformity with Judge Brown's distinct recollection of his disapproval of the stock option for directors.

40. The affidavit of director Woods is hearsay. The court finds the affidavit to be reliable, since the facts contained therein are corroborated by the testimony of the witnesses. However, since Woods' affidavit is merely corroborative, it is unnecessary for the court to rely on the affidavit in reaching its decision.

41. The stock option proposal was presented to Judge Brown in an informal meeting in chambers. Judge Brown orally approved of the employee stock option plan, agreeing that it was an appropriate means to recruit new talent to Clinton.

42. Judge Brown, acting as the unanimous voice of the Clinton stockholders,

---

**2.** This type of judicial supervision of corporate affairs has since become more common, especially in multidistrict litigation, and is an example of the court's equity powers to fashion an adequate remedy.

orally approved the 1974 employee stock option plan.

## CONCLUSIONS OF LAW

The ultimate issue presented is whether the option exercised by plaintiff in 1980 was a "qualified stock option" within the meaning of § 422 of the Internal Revenue Code of 1954.

The statute provides:

> For purposes of this part, the term "qualified stock option" means an option granted to an individual ... for any reason connected with his employment by a corporation, if granted by the employer corporation or its parent or subsidiary corporation, to purchase stock of any of such corporations, but only if—
>
> (1) the option is granted pursuant to a plan which includes the aggregate number of shares which may be issued under option, and the employees ... eligible to receive options, *and which is approved by the stockholders of the granting corporation* within 12 months before or after the date such plan is adopted; ....

26 U.S.C. § 422(b)(1) (emphasis added).

The Treasury Regulation implementing this statute provides:

> A qualified stock option granted after December 31, 1964, must be granted pursuant to a plan *which is approved by the stockholders of the granting corporation* within 12 months before or after the date the plan is adopted. The approval of the stockholders must comply with all applicable provisions of the corporate charter and bylaws, and the law of the State of incorporation and must represent the express consent of stockholders holding at least a majority of the voting stock of the corporation voting in person or by proxy at a duly held stockholders' meeting.

26 C.F.R. § 1.422–2(b)(1) (emphasis added).

The court has previously ruled that Judge Brown was authorized to act as the proxy for the stockholders within the meaning of § 422(b)(1) and that the absence of a written order of approval was not fatal to plaintiffs' claim. The court shall not repeat the entire discussion here and incorporates herein its previous discussion of the issues. *See* 766 F.Supp. 993, 995–98.

The language of § 422(b)(1) refers only to stockholder approval to qualify a stock option for tax purposes. The court has previously ruled, however, that Judge Brown had the authority to exercise stockholder approval within the meaning of § 422(b)(1).

The court's conclusion is consistent with the legislative intent. The purpose of granting favorable tax treatment to qualified options was to allow corporations to offer employment incentives. The requirement of stockholder approval ensures that the stock option offerings would not operate to the detriment of the stockholders' interests. Judge Brown represented the interests of the shareholders in his oversight of Clinton. When Judge Brown exercised authority normally reserved to the stockholders, he acted as the unanimous voice of the stockholders. A contrary conclusion is inconsistent with the intent of Congress.

There is no written order by Judge Brown approving the 1974 stock option plan. Nor is there a transcript of any proceeding in which Judge Brown approved the plan. However, oral testimony of the persons attending the March 1974 meeting is sufficient to establish the fact of his approval. As the court previously ruled, in the absence of a written record of judicial approval, "some present affirmative expression of a distinct recollection by Judge Brown" could be sufficient. 766 F.Supp. at 998. The testimony of Judge Brown, as corroborated by the testimony of the other witnesses, is sufficient to establish that Judge Brown did approve of the stock option plan.

The option exercised by plaintiff Robert Brooks in 1980 was a "qualified stock option" within the meaning of § 422 of the Internal Revenue Code of 1954.

IT IS BY THE COURT THEREFORE ORDERED that judgment be entered in favor of plaintiffs.